UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| OPENTV, INC., et al.,<br><br>  Plaintiffs,<br><br>v.<br><br>APPLE INC.,<br><br>  Defendant. | Case No.  5:15-cv-02008-EJD<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**<br><br>Re: Dkt. No. 33 |

Defendant Apple, Inc. ("Defendant") moves, under Section 101 of the Patent Act, to dismiss for invalidity two of five asserted patent infringement claims brought by Plaintiffs OpenTV, Inc., Nagravision S.A., and Nagra France S.A.S. (collectively "Plaintiffs" or "OpenTV"). The two patents at issue in the current motion are U.S. Patent Nos. 6,148,081 (the "'081 patent" or "'081") and 7,644,429 (the "'429 patent" or "'429"). Dkt. No. 1, Exs. 1 and 2, and Dkt. No. 33. In addition, Defendant filed supplemental information in support of its motion to dismiss, in which it limited the scope of the motion to claims 1-3 and 23-24 of the '081 patent and claims 1, 2, and 4-6 of the '429 patent. Dkt. No. 71 at 2. The current order addresses the patent eligibility of these claims.

For the reasons stated below, the Court GRANTS Defendant's Motion to Dismiss as to claims 1-3 and 23-24 of the '081 patent and claims 1, 2, and 4-6 of the '429 patent.

## I.   TECHNOLOGICAL BACKGROUND

The technology of the patents at issue relates to the secure transmission of digital content directly to a user's television, personal computer, or mobile device. Id. at 12-13. While technology in the field of interactive television systems gives digital content providers the flexibility to transmit their content directly to a user's device, such flexibility also makes the delivery process unsafe. Id. To better secure the delivery process, these providers use Digital Rights management (DRM) and authentication. Id. The patents at issue (i.e. '081 and '429) relate to the use and implementation of these security measures to secure the delivery process of digital content.

## II.   PATENT BACKGROUND

### A.   The '081 Patent

The '081 patent is directed to a method and system of controlling an interactive television application's[1] right to access other interactive applications. '081 at 9:7-15 and 10:4-12. The embodiment that best illustrates the above concept in practice involves a user's ability to make a purchase online with the use of a credit card transaction application. Id. at 9:10-41 and 10:4-17. A user may browse an online shopping application and choose to purchase an item listed. However, the producer that operates the shopping application can vary from the one that operates the credit card application. Consequently, the user's ability to complete the purchase (i.e. make payment using the credit card application) will depend on the scope of rights granted by the credit card application to the shopping application.[2] Id. If the access rights granted to the shopping application permit it to use the credit card application, then the user may successfully complete the

---

[1] An "interactive television application" is defined as a set of one or more program modules that share common access rights and are "owned by the same producer." '081 at 4:32-37. A "module" comprises application code, raw data or graphical information. Id. at 4:31-33. A "credential" is defined as "a collection of information" that can be used to identify and verify the privileges and limitations of particular modules. Id. at 4:47-49 and 8:61-65.

[2] The credit card application may not share the same access rights as the shopping application and may be owned and operated by a different producer. '081 at 9:7-15.

2
Case No.: 5:15-cv-02008-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

1  purchase. If the credit card application does not grant access rights to the shopping application,
2  the user will be unable to make the purchase using the application. Id. at 10:4-7 & 9:10-41.
3     The '081 patent attempted to capture the above practice in the following three steps recited
4  in claim 1: loading an interactive application with an associated credential in the interactive
5  television system, verifying the credential, and allowing an interactive application to perform one
6  or more functions based on the permission information contained in the credential. System claim
7  23 links the steps recited in method claim 1 above to conventional hardware components such as a
8  control unit (i.e. a general purpose computer) and conventional memory (such as SRAM and
9  DRAM), which are collectively configured to perform these steps. Id. at 6:1-5. The control unit is
10 configured to execute the interactive applications and verify credentials, while the convention
11 memory component is responsible for storing these applications and credentials. Id. at 6:4-16 &
12 claims 23 and 24.
13    Dependent claims 2 and 3 include various process limitations such as "storing" credential
14 information and "verifying whether an expiration date has expired." Id. at Abstract & 11:9-19; see
15 also Id. at Claims 2 and 3. Dependent claim 24 simply recites a limitation that defines the control
16 unit as a general-purpose computer. Id. at 6:4-16 & claim 24.
17   **B.**  **The '429 Patent**
18    The '429 patent is directed to a system that reduces the time it takes for a user to access
19 pay per view ("PPV") programming. '429 at 1:28-32 & 2:26-33. Traditionally, users would
20 expend a significant amount of time on the phone with human operators to access PPV content.
21 Id. at 1:39-47. These operators would request product specific information from and grant the
22 users access to a product (a PPV, for example) after checking the user's financial status (i.e.
23 whether the users paid product subscription fees for example). Id. at 1:40-52. To reduce the
24 delays associated with such phone conversations, human operators were replaced with automatic
25 voice servers, and the automatic servers were replaced with interactive screen based systems. Id.
26 Despite these improvements, however, users were required to continue manually inputting

28 Case No.: 5:15-cv-02008-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

information to access content. Id. at 2:5-9. The '429 patent attempts to solve this problem by granting the user faster product access and automatically renewing access rights to digital content after the user initially inputs the necessary information into a database.[3] It purports to achieve this by providing users with the ability to communicate directly with the entity (Subscriber Authorization System or "SAS") responsible for generating the access right (thereby bypassing the human operators). Id. at 8:54-63 & 15:26-41.

System claim 1 recites the components that carry out the processes of automatic renewal and faster product access. These components include: a subscriber management system ("SMS") for storing user subscription information, a SAS for generating an Entitlement Management Message ("EMM")[4] and renewing a user's access rights, a communications server for transmitting the EMM to the user, and a direct link through which the EMM is transmitted to the user's receiver to enable the user to access content (i.e. PPV programming). The SMS is simply a database that contains user files and pay per view details. '429 at 7:44-49. The SAS is a mainframe computer connected to a keyboard and monitor. '429 at 8:42-47. The communications server and the receiver are conventional components well known in the industry. Finally, the dependent claims of the '429 patent include system limitations that describe the routine operation of well-known electronic components.

### C. Procedural History

Plaintiff commenced the instant action on May 5, 2015 in the Northern District of California. Dkt. No. 1. Defendant filed the instant Motion to Dismiss on June 26, 2015. Dkt. No. 33. Plaintiff filed an opposition brief on July 17, 2015, to which Defendant filed a reply on July 29, 2015. Dkt. Nos. 47 and 51. A hearing was held regarding this matter on October 1, 2015.

---

[3] While the user was previously required to input information manually on an interface or provide this information to a human operator, he could input the necessary user information by inserting a smartcard directly into his Set-Top-Box. See '429 at 15:27-32.

[4] EMM gives the user access to the product. '429 at 2:13-16. It is a mechanism by which the encrypted data representative of a product is decrypted for a particular user to grant him product access (pay per view programming for example). '429 at 2:13-19.

### III. LEGAL STANDARD

#### A. Motion to Dismiss

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. Navarro v. Block, 250 F. 3d 729, 732 (9th Cir. 2001). Under Rule 12(b)(6), a complaint may be dismissed for failure to state a claim upon which relief may be granted. For purposes of evaluating a motion to dismiss, the court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." Usher v. City of Los Angeles, 828 F. 2d 556, 561 (9th Cir. 1987). To survive a Rule 12(b)(6) motion, the plaintiff must allege facts sufficient to state a claim to relief that is "plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). While a complaint does not need detailed factual allegations, the pleading must offer more than mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 545 (2007); see Papsan v. Allain, 478 U.S. 265, 286 (1985) (holding that federal courts "are not bound to accept as true a legal conclusion couched as a factual allegation").

In order to state a claim for patent infringement, "a patentee need only plead facts sufficient to place the alleged infringer on notice. This requirement ensures that the accused infringer has sufficient knowledge of the facts alleged to enable it to answer the complaint and defend itself." Internet Patents Corp. v. Gen. Auto. Ins. Servs., 29 F. Supp. 3d 1264, 1267 (N.D. Cal. 2013) (quoting Phonometrics, Inc. v. Hospitality Franchise Sys., Inc., 203 F.3d 790, 794 (Fed. Cir. 2000)).

#### B. Burden of Proof

There is a dearth of direct authority addressing the appropriate burden of proof to be applied to determine patent eligibility at the pleading stage. Neither the Supreme Court nor the

Federal Circuit has directly addressed this issue.  See Alice Corp. Pty. v. CLS Bank Int'l, 134 S. Ct. 2347 (2014) (deciding the issue of patent eligibility without addressing the question of burden of proof); see Mayo Collaborative Servs. v. Prometheus Labs., Inc., 132 S. Ct. 1289 (2012) (same); see also Ultramercial Inc. v. Hulu, LLC, 772 F. 3d 709 (Fed. Cir. 2014) (Mayer, J., concurring) (noting that the Supreme Court has "never mentioned…any presumption of eligibility" standard in a Section 101 analysis, and arguing that the presumption of validity should not apply in such cases).

District courts are split regarding the appropriate burden of proof that applies.  see Modern Telecom Sys. LLC v. Earthlink, Inc., No. 14-CV-0347-DOC, 2015 WL 1239992, at *7-9 (C.D. Cal. Mar. 17, 2015) (rejecting the clear and convincing standard); see also OpenTV, Inc. v. Apple, Inc., No. 14-CV-01622-HSG, 2015 WL 1535328, at *2 (N.D. Cal. April 6, 2015) (rejecting the clear and convincing standard and granting motion to dismiss prior to formal claim construction); see also Cogent Med. Inc. v. Elsevier, Inc., 13-CV-4479-RMW, 2014 WL 4966326, at *3 (N.D. Cal. Sept. 30, 2014) (same); but see Morsa v. Facebook, Inc., 77 F. Supp. 3d 1007, 1011 (C.D. Cal. 2014) (applying the clear and convincing standard); Wolf v. Capstone Photography, No. 13-CV-07573-CAS, 2014 WL 7639820, at *5 (C.D. Cal. Oct. 28, 2014) (same).  However, regardless of the applicable standard, the asserted claims of the '081 and '429 patents currently at issue contain ineligible subject matter.  Therefore, the Court does not need to resolve this disagreement in the current motion.

### C.     Patent Eligibility under 35 U.S.C. § 101

Section 101 of the Patent Act provides that a patent may be obtained for "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101.  The Supreme Court has long held that this provision contains the important implicit exception that natural phenomena, laws of nature, and abstract ideas are not patentable.  Alice, 134 S.Ct. at 2354 (quoting Diamond v. Diehr, 450 U.S. 175, 185 (1981)).  In applying this exception, courts "must distinguish between patents that claim the

6
Case No.: 5:15-cv-02008-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

building blocks of human ingenuity and those that integrate the building blocks into something more." Id. at 2354.  While Alice is considered the leading case on abstract idea ineligibility, it relies heavily on the Supreme Court's earlier decisions in Bilski v. Kappos, 561 U.S. 593 (2010), and Mayo, 132 S. Ct. at 1289.  See Shortridge v. Found. Constr. Payroll Serv., LLC, No. 14-CV-04850-JCS, 2015 WL 1739256, at *7 (N.D. Cal. April 14, 2015) (quoting Alice, 134 S. Ct. at 2355-57).

In determining whether claims are patent ineligible, a court must first decide whether they are directed to a patent-ineligible concept, such as an abstract idea.  Alice, 134 S. Ct. 2355 (quoting Diamond v. Chakrabarty, 447 U.S. 303, 309 (1980)).  A principle in the abstract is either a fundamental truth, original cause, or a motive.  Id. at 2356; see Gottschalk v. Benson, 409 U.S. 63, 67 (1972); see also CyberSource Corp. v. Retail Decisions, Inc., 654 F. 3d 1366, 1371 (Fed. Cir. 2011) (holding that mental processes do not constitute patent-eligible subject matter because applying human intelligence to solve practical problems is no more than a claim to a fundamental principle).

The court's next inquiry, upon determining that the claims are directed to an abstract idea, is whether the claims constitute an "inventive concept" sufficient to transform the abstract idea into a patent-eligible application.  Alice, 134 S. Ct. at 2358.  Such a transformation, however, requires more than just the recitation of the abstract idea followed by the words "apply it."  Id. at 2357.  Moreover, simply adding a generic computer to an otherwise abstract concept is not sufficient to save the patent from ineligibility.  Id. at 2358 ("The mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention.").  Rather, to satisfy the inventive concept requirement, a computer-implemented invention must involve more than the performance of "well-understood, routine [and] conventional activities previously known in the industry."  Id. at 2359.

Finally, many courts also turn to the "machine-or-transformation" test set forth in Bilski to determine if there is an inventive concept present in a patent.  Bilski, 561 U.S. at 594.  Under this

test, a claimed process is patentable if it is tied to a particular machine or apparatus or if it transforms a particular article into a different state or thing. Id. at 594. While the machine-or-transformation test is not dispositive, it is useful in determining whether there is an additive concept to an abstract idea that is sufficient to render the idea patent-eligible. Bancorp Servs., LLC v. Sun Life Assur. Co. of Canada (U.S.), 687 F. 3d. 1266, 1278 (Fed. Cir. 2012).

## VI. DISCUSSION

### A. The '081 Patent

#### i. Abstract Idea

Plaintiffs assert that the '081 patent is not drawn to an abstract idea because it provides a practical technological solution to a specific problem. Dkt. No. 47 at 12. In addition, Plaintiffs contend that the '081 patent is necessarily rooted in computer technology to overcome a problem specifically arising in the realm of computer and content security. Dkt. No. 47 at 12-13. The Court finds these arguments unpersuasive.

The '081 patent relates to controlling the scope of a particular interactive television application's right to access the content and capability of other interactive applications.[5] The practice of controlling access to information by verifying credentials (via well-known encryption methods[6]) is neither novel nor specific to interactive television systems. See Intellectual Ventures II LLC v. JP Morgan Chase & Co., No. 13-CV-3777-AKH, 2015 WL 1941331, at *12 (S.D. N.Y. Apr. 28, 2015) (reasoning that protecting access to digital information by enforcing certain rules is a conventional concept); see also Bilski, 561 U.S. at 610-11. It is a long-standing and well-understood business practice that predates the internet. Cf OpenTV, Inc., 2015 WL 1535328, at *3 ("The limitations that such information be confidential, *verified*…do[es] nothing to

---

[5] An embodiment described in the specification discusses controlling an online shopping application's right to access an electronic commerce application (for processing a credit card payment) by verifying a credential. '081 9:7-20 and 10:4-7.

[6] The '081 patent states that there are a variety of security systems that use "public key" encryption and certain embodiments of the '081 patent use this encryption method. '081 at 10:37-44.

8

Case No.: 5:15-cv-02008-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

render…[an abstract idea] concrete or tangible.") (emphasis added); see also Paone v. Broadcom Corp., No. 15-CV-0596-BMC-GRB, 2015 WL 4988279, at *7 (E.D. N.Y. Aug. 19, 2015) (reasoning that encryption in general represents a basic building block of human ingenuity that has been used for hundreds of years).  Method claim 1 of the '081 patent merely applies this practice to a specific technological environment (i.e. internet based interactive television applications) with the use of a general purpose computer[7], which performs credential verification.  DDR Holdings, LLC v. Hotels.com, L.P., 773 F. 3d 1245, 1258 (finding that claims that offer media content in exchange for viewing an advertisement along with routine additional [steps such as…*restrictions on public access*…recite an abstract idea])(emphasis added); see Bilski, 561 U.S. at 610-11 ("[P]rohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of… [the abstract idea] to a particular technological environment."); see also OpenTV, Inc., 2015 WL 1535328, at *3.

Independent system claim 23 then recites generic components (such as a "memory" and "a control unit") configured to perform the routine and conventional steps enumerated in method claim 1.  See Alice, 134 S. Ct. 2360 (explaining that components such as a "data processing system," and a "data storage unit" are purely functional and generic components that make a system claim patent ineligible if they are a recitation of the method claims on a generic computer)(emphasis added); see also '081 at claim 24.  None of these generic components constitute meaningful limitations beyond the implementation of the method steps of claim 1 on a general purpose computer.  See Versata Dev. Group, Inc. v. SAP Am., Inc., 793 F. 3d. 1306, 1327 (Fed. Cir. 2015) ("The presence of a general purpose computer to facilitate operations through uninventive steps does not change the fundamental character of an invention.").

For the reasons stated above, the '081 patent claims are also not necessarily rooted in computer technology to solve a problem "specifically arising" in the realm of computer and content security.  These claims merely apply the well-known concept of credential verification to

---

[7] The control unit comprises a general-purpose computer. See Claim 24 of '081.

web-based interactive television applications. See Intellectual Ventures II LLC, 2015 WL 1941331, at *12; see also Essociate, Inc. v. 4355768 Canada Inc., No. 14-CV-0679-JVS, 2015 WL 4470139, at *5 (C.D. Cal. Feb. 11, 2015) ("[T]he performance of some business practice known from the pre-internet world along with the requirement to perform it on the internet…is not necessarily rooted in computer technology.")(emphasis added); see also Versata Dev. Group, 793 F. 3d. at 1333 (reasoning that claims that limit known business processes to particular technological environments are not necessarily rooted in computer technology and are patent in-eligible); see also Bilski, 561 U.S. at 610-11.  Accordingly, the Court concludes that the '081 patent claims are directed to the abstract idea of controlling access rights of software applications to access other software applications in the technological environment of interactive television systems.

### ii. Inventive Concept

Plaintiffs next assert that the '081 patent constitutes "significantly more" than an abstract idea because its claims satisfy the machine-or-transformation test and are "grounded in the concrete technological context" of interactive television systems.  Dkt. No. 47 at 16 and 18.  This argument is similarly unpersuasive.

As already noted, the fact that the '081 claims are directed to an abstract idea is not fatal to patentability.  The Court may still deem a patent valid if its claims add an inventive concept sufficient to transform an abstract idea into a patent eligible application.  Alice, 134 S. Ct. at 2357.  Therefore, the determinative inquiry regarding the '081 claims is whether they add an inventive concept sufficient to transform the concept of controlling access rights to software applications into a patent eligible application.  Such a transformation, however, requires more than just the recitation of the abstract idea followed by the words "apply it" or a generic computer's implementation of routine and well-understood business practices.  Id. at 2359 (holding that a computer-implemented invention must involve more than the performance of "well-understood, routine [and] conventional activities previously known in the industry" to be deemed patentable).

10

Case No.: 5:15-cv-02008-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

Both the steps recited in claim 1 and the components used to perform these steps are conventional and routine. See Alice, 134 S. Ct. at 2360 (concluding that a data processing system, a communications controller, and data storage unit are purely functional, generic and part of nearly every computer); see also Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Assoc., 776 F. 3d 1341, 1349 (Fed. Cir. 2014) (rejecting the argument that an inventive concept could be found in cases where the claim limitations are routine, well known, and conventional). The component responsible for executing the interactive television applications and verifying credentials (via well-known encryption methods) within these applications in order to control access rights is a general purpose computer[8], which is well-known. See Alice, 134 S. Ct. 2351 (holding that an instruction to apply the abstract idea to a generic computer is not enough to transform the abstract idea into a patent-eligible invention.); see also Paone, 2015 WL 4988279, at *7.

In addition, the '081 claims, when viewed individually or as a whole, neither improve the functioning of the computer itself nor effect an improvement in the technological field of interactive television systems. Alice, 134 S. Ct. at 2350 (finding that claims that merely apply an abstract idea to a generic computer and neither improve the functioning of the computer itself nor effect an improvement in a technical field are patent ineligible). The '081 patent claims simply apply the known concept of credential verification to web-based software applications and use a general purpose computer to perform the verification. DDR Holdings, 773 F. 3d at 1258 ("[T]he court cautioned that 'not all claims purporting to address Internet-centric challenges are eligible for patent.'"); see also Intellectual Ventures II LLC, 2015 WL 1941331, at *14 (concluding that features such as encryption and decryption and the use of an access mechanism to enforce certain rules constitute well understood and conventional practices); see also Blue Spike LLC v. Google, Inc., No. 14-CV-01650-YGR, 2015 WL 5260506, at *7 (N.D. Cal. Sept. 8, 2015) ("[I]nclusion of

---

[8] The control unit includes all the components of a *typical computer* such as a microprocessor, microcontroller, and memory. See '081 at 6:4-9; see also claim 24.

11
Case No.: 5:15-cv-02008-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

generic computer components…do[es] not save…claims from invalidity.").

Next, Plaintiffs argument that the machine-or-transformation test is satisfied because the '081 patent claims are tied to "concrete machines" and require a "particular tangible machine" and "particular components" to perform certain tasks is unpersuasive.  The transformation prong of the analysis is not applicable here because the '081 patent claims neither improve the components recited nor alter the form of any data or credential provided in the specification in a meaningful way.  Alice, 134 S. Ct. 2347, 2350 (reasoning that applying the abstract idea onto a generic computer without improving the functionality of the computer itself or effecting an improvement in a technical field is insufficient to transform an abstract idea into a patent-eligible invention). Therefore, the key inquiry regarding the machine or transformation test is whether the '081 patent claims are tied to a machine.

As stated above, the '081 patent claims require nothing more than a general purpose computer and certain generic and well known components (recited in claim 23) to perform the method steps recited in claim 1.  Components, such as "a control unit," "memory" and "receiver," collectively responsible for performing all of the steps outlined in claim 1, are not in any way unique or specifically designed to implement these steps.  They consist of conventional components that perform normal and basic functions.[9]  As such, these claims fail to transform a patent-ineligible abstract idea into a patent-eligible concept.  See California Inst. of Tech. v. Hughes Comm., Inc., 59 F. Supp. 3d 974, 987 (C.D. Cal. Nov. 3, 2014) ("[A]bstract ideas may become patentable if they are tied to uniquely designed machines with specific purposes…[b]ut Courts must remember that generic recitation of hardware will not save a claim."); see also Versata Dev. Group, Inc., 793 F. 3d at 1335 (holding that the normal and basic functions of a computer do not transform a general purpose computer into a specific machine); see also Blue Spike LLC, 2015 WL 5260506, at *7 ("[I]nclusion of generic computer components…do[es] not save…claims from invalidity.").  Therefore, the claims of the '081 fail to satisfy the machine-or-

---

[9] See '081 6:4-20.

transformation test.

In sum, the '081 patent claims are directed to the abstract idea of controlling the rights of software applications to access other software applications and fail to contain an inventive concept sufficient to transform this abstract idea into a patent-eligible application.  In addition, the recited claim limitations, when considered individually or as an ordered combination, fail to add anything transformative to the patent.

B. The '429 Patent

i. Abstract Idea

Plaintiffs assert that the '429 patent is not directed to an abstract idea because it contains a novel arrangement of specific components directed towards a specific purpose and is necessarily rooted in computer technology to overcome a problem specifically arising in the realm of "digital content access and distribution." Dkt. No. 47 at 22.  The Court disagrees.

The '429 patent claim 1 is drawn to the abstract idea of granting and automatically renewing conditional access to a product (i.e. broadcast and pay per view content) based on information initially provided by a user.  See '429 at 1:28-32.  Granting access to a product (pay per view programming for example) after confirming that the user has paid for the product and provided certain product specific information has been a well-known practice in the cable industry for decades.[10]  See id. at 1:28-68 & 2:5-12.  Moreover, the concept of renewing access to products (i.e. pay per view events) using a generic computer based on user information stored in the computer is akin to a human operator accessing the information in a filing cabinet and referring to this information prior to renewing a user's membership.

In essence, the '429 patent is directed to automating the renewal of a user's access to certain products (using a generic computer[11]) and reducing the delay associated with gaining

---

[10] The first two columns describe several arrangements of "known systems" that grant a user access to broadcast and PPV content.  See '429 at 1:28-68 & 2:5-12.

[11] See '429 at 8:41-47.

13

Case No.: 5:15-cv-02008-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

access to these products (i.e. PPV programming) by bypassing the need for the user to deal with human operators. See '429 at 2:22-33. These human operators are replaced with a generic computer that more efficiently performs the task of granting product access to a user. Alice, 134 S. Ct. at 2358; see Mayo, 132 S. Ct. at 1294; see also SiRF Tech., Inc. v. Int'l Trade Comm'n, 601 F. 3d 1319, 1333 (Fed. Cir. 2010) (holding that the computer must play a significant part in permitting the claimed method to be performed, rather than function solely as an obvious mechanism for permitting a solution to be achieved more quickly). Accordingly, the Court concludes that the '429 patent claims are directed to the abstract idea of granting and automatically renewing conditional access to a product (i.e. broadcast and pay per view programming) based on information initially provided by a user.

### ii. Inventive Concept

Next, Plaintiffs assert that the '429 patent constitutes significantly more than an abstract idea because its claims define a specific architecture of generally known components to solve a technological problem. Dkt. No. 47 at 22. In addition, Plaintiffs assert that the '429 patent claims satisfy the machine-or-transformation test because they recite a "concrete machine arranged to perform particular roles inseparable from the claimed concepts." Dkt. No. 47 at 28. The court finds these arguments unpersuasive.

Similar to the '081 patent, the determinative inquiry regarding the '429 claims is whether they add an inventive concept sufficient to transform the abstract idea of granting and automatically renewing conditional access to a product (i.e. broadcast and pay per view programming) into a patent eligible application. The '429 patent involves replacing a human operator that previously provided product access to the user (by transmitting an EMM to his television) with a generic computer that is now configured to send this message.

System claim 1 recites the implementation of the above concept with generic components. Specifically, the implementation consists of using a generic computer[12] and conventional industry

---

[12] SAS comprises a mainframe computer "in known fashion" connected to a keyboard and a

components to store user information and deliver an EMM to the user several minutes faster.[13]  see CyberSource Corp., 654 F. 3d at 1372; see also Cogent Med., Inc. v. Elsevier Inc., 70 F. Supp. 3d 1058, 1060 (N.D. Cal. 2014) (finding patent-ineligible claims that amounted to no more than a computer automation of what can be performed in the human mind).

Next, Plaintiffs argument that their claims satisfy the machine-or-transformation test because they contain "meaningful limits on claim scope," and provide a concrete machine that performs particular roles inseparable from the claimed concepts is misplaced.  The transformation prong is inapplicable because the '429 claims neither improve the components recited nor transform data in any significant way.  Alice, 134 S. Ct. 2347, 2350.  These claims simply automate the process of granting and renewing access rights to a product based on information initially provided by the user.  Therefore, the key inquiry is whether the '429 patent claims are tied to a machine.

Just like the '081 patent, the '429 patent claims require nothing more than a general purpose computer and certain generic and well known components to perform simple tasks.  See Alice, 134 S. Ct. at 1258; see also SiRF Tech., Inc., 601 F. 3d at 1333; see also see Blue Spike LLC, 2015 WL 5260506, at *7.  While the terminology used by the claims might lead one to believe that the structural and component limitations are unique or specifically designed to perform certain tasks, each of the components recited are conventional.  See California Inst. of Tech., 59 F. Supp. 3d at 987; see also Mayo, 132 S. Ct. 1289 (explaining that previous courts have warned against interpreting patent statutes in ways that make patent eligibility dependent simply on the draftman's art.).  System claim 1 lists the following functional limitations and components: a receiver, a SMS, a communications server, and a direct link that connects the receiver to the

---

Visual Display Unit.  '429 at 8:42-46.

[13] SMS was initially a group of human operators.  These operators were replaced with an automatic voice server that the user telephone.  Thereafter, the automatic voice server was replaced by interactive screen based systems into which users would manually input information.  Even with these changes, however, the user continued to experience delays of "several minutes" before receiving the EMM.  See '429 1:53-56, 2:23-33, and 15:5-36.

communications server.  These components are well-known in the industry.  See '429 at 1:37-67, 7:44-49 and 8:41-47 (The '429 specification describes in detail prior art that used the listed components in conjunction with human operators to grant the user product access).  In essence, the '429 patent claims allow a user to access PPV programming faster with the use of a mainframe computer and other conventional components.  For these reasons, the '429 patent fails to satisfy the machine-or-transformation test.  See Blue Spike, LLC, 2015 WL 5260506, at *6.

In conclusion, the '429 patent claims are directed to the abstract idea of granting and automatically renewing conditional access to a product (i.e. broadcast and pay per view television) based on user provided information and fail to contain an inventive concept sufficient to transform this abstract idea into a patent-eligible application.  Moreover, the recited claim limitations, when considered individually or as an ordered combination, fail to add anything transformative to the abstract idea.

## VII. DEPENDENT CLAIMS

The additional limitations recited in the dependent claims of the '081 and '429 patent are addressed in the following chart:

| Claim | Language | Analysis |
| --- | --- | --- |
| '081 Patent Claim 2 | The method of claim 1 further comprising storing said information if said credential is valid. | The storing of information in memory is not a novel concept. '081 at 6:1-3; see also Alice, 134 S. Ct. 2360 (concluding that nearly every computer includes a data storage unit to store information). |
| '081 Patent Claim 3 | The method of claim 1 where said credential contains an expiration date and wherein said step of verifying said credential further comprises determining whether said expiration date has passed. | Method claim 3 simply verifies if an expiration date has passed. Alice, 134 S. Ct. at 2358; see Intellectual Ventures II LLC, 2015 WL 1941331, at *12 (reasoning that protecting access to digital information by enforcing certain rules is a conventional concept). |

| | | |
|---|---|---|
| '081 Patent Claim 24 | The device of claim 23 wherein said control unit comprises a general-purpose computer. | This limitation clearly recites that the main component (i.e. control unit) responsible for (1) verifying the credential, and (2) restricting or granting access to a software application based on the result of the verification is a general-purpose computer. See Alice, 134 S. Ct. at 2358.<br><br>There is nothing unique or novel about this general-purpose computer or its use in performing the steps outlined in claim 1. See '081 at 6:4-20. |
| '429 Patent Claim 2 | A conditional access system according to claim 1, further comprising a receiver/decoder for the subscriber, the receiver/decoder being connectable to said communications server, and hence to said subscriber authorization system, via a modem and a telephone link. | Receivers, communications servers, and databases have been used to transmit, receive and store information and are well known. Alice, 134 S. Ct. at 2360 (indicating that a communications controller, data processing system, and a data storage unit are part of nearly every computer and are therefore well known).<br><br>The first two columns describe several arrangements of "known systems" that include these components (i.e. communications server, receiver etc.) in operation. See '429 at 1:28-68 & 2:34-67. |
| '429 Patent Claim 5 | The conditional access system of claim 1, wherein the subscriber management system sends subscriber information to the subscriber authorization system when changes occur in the subscriber's data. | The SMS constitutes a database of information. The concept of a database is not novel or unique. See Alice, 134 S. Ct. at 2360 (concluding that a data storage unit is part of nearly every computer).<br><br>The SAS is a "mainframe computer" that is known in the art. See '429 at 8:36-53; see also Alice, 134 S. Ct. at 2358.<br><br>Information exchanged between |

17

Case No.: 5:15-cv-02008-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

| | | a database (as part of or remote from a computer) and the computer is not novel and adds nothing to the 101 analysis. |
|---|---|---|
| '429 Patent Claim 6 | The conditional access system of claim 1, wherein the command is at least one command selected from a group consisting of a product order command, a subscription modification request command, and a parental code reset command. | These commands were previously executed at the direction of human operators, but are now configured to execute with the use of a mainframe computer. See '429 8:41-47. |

For the reasons stated above, the dependent claims of the '081 and '429 recite conventional processes and functional limitations of generic and well-known components. Therefore, dependent claims 2, 3, and 24 of the '081 patent and claims 2, 5, and 6 of the '429 patent are directed to abstract ideas and fail to contain inventive concepts sufficient to transform these abstract idea into patent-eligible applications.

## VIII.   CONCLUSION

The application of the two step test for patent eligibility outlined in Alice must strike a precise balance in the context of software patents. On one hand, patents should encourage inventors to create new and innovative solutions to today's technological problems. On the other hand, however, patent law should not be used as a tool to protect inventions that simply limit longstanding ideas to certain technological environments.

Keeping this balance in mind and for the foregoing reasons, the asserted claims of the '081 and '429 patents are ineligible under Section 101. Therefore, the Court GRANTS Defendant's Motion to Dismiss and holds that claims 1-3 and 23-24 of the '081 patent, and 1, 2, and 4-6 of the '429 patent are invalid under 35 U.S.C. § 101.

**IT IS SO ORDERED.**

Dated: January 28, 2016

_____
EDWARD J. DAVILA
United States District Judge

18
Case No.: 5:15-cv-02008-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS